IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

COLIN LEE BASHANT, )
 )
 Petitioner, )
 )
vs. ) Case No. CIV-15-119-W
 )
TRACY McCOLLUM, Warden, )
 )
 Respondent. )

**REPORT AND RECOMMENDATION**

**I.    Petition and procedural history.**

Colin Bashant (Petitioner), a state prisoner appearing pro se,[1] petitions the court for a writ of habeas corpus under 28 U.S.C. § 2254, challenging a judgment of conviction in the District Court of Oklahoma County in Case No. CF-1997-6575. Doc. 1, at 1.[2] There, on January 22, 1998, Petitioner entered a blind plea of guilty to six counts of Rape in the First Degree, two counts of Indecent or Lewd Acts with a Child Under Sixteen, and two counts of Forcible Oral Sodomy and, on March 13, 1998, the court sentenced him to twenty years imprisonment on each count, each count to be served consecutively. *Id.* Petitioner did not appeal his conviction. *Id.*

---

[1]    The court gives a broad reading to a pro se petitioner's pleadings but may not act as his advocate or create arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2]    Citations reflect this Court's CM/ECF designation and pagination.

Petitioner now claims in his January 30, 2015 federal habeas petition[3] that he is being held in violation of the Constitution because: (1) he "is being denied a corrective judicial process" in violation of his right to due process, (2) he "failed to receive the effective assistance of trial counsel . . . when trial counsel failed to comply with the Petitioner's orders to file his direct appeal and/or withdrawal his plea," and (3) "trial counsel was ineffective and by failing to consult with the Petitioner about his appeal right. This denied [Petitioner] a direct appeal due to no fault of his own, in violation of due process of law, under the Sixth and Fourteenth Amendments . . . ." *Id.* at 4.[4] Petitioner alleges in Ground One, the petition's single ground, that: "Trial counsel abandoned Petitioner and failed to file the requested Direct Appeal, this denied the Petitioner the ability to withdraw his plea and/or file his appeal, and as such, the Petitioner is being denied a corrective judicial process." *Id.* at 5. Petitioner supports his petition with argument in the petition, *id.* at 11-20, a separate brief, Doc. 2, and exhibits,

---

[3] The petition was "filed" on the day Petitioner gave it to prison officials for mailing. Doc. 1, at 20; *see Fleming v. Evans*, 481 F.3d 1249, 1255 n.2 (10th Cir. 2007).

[4] Quotations in this report are reproduced verbatim unless otherwise indicated. Plaintiff's use of the uppercase is altered in part.

Doc. 3.[5]

United States District Judge Lee R. West referred the matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 6. The undersigned ordered a response to the petition. Doc. 7. Respondent filed a supported motion to dismiss, maintaining the petition is time-barred. Docs. 10, 11. Petitioner responded to the motion. Doc. 12. After a careful review of the parties' submissions, the issues presented, and the relevant authority, the undersigned recommends dismissal of the petition as untimely.

## II.  Period of limitation.

A state prisoner's petition for a writ of habeas corpus is subject to a one-year period of limitation under the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2244(d)(1). That clock generally begins to run when "the judgment bec[omes] final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A).[6]

Here, Petitioner pled guilty, and on March 13, 1998, the court entered judgment and sentence. Doc. 1, at 1. In seeking dismissal of the petition,

---

[5]  Plaintiff neglected to sign Ex. 7, his Sworn Affidavit. Doc. 3, Ex. 7, at 5. He subsequently submitted a replacement page bearing his signature and, so, has corrected the omission. *See* Doc. 9.

[6]  Petitioner relies only on § 2244(d)(1)(A) in vouching for the timeliness of his petition. Doc. 1, at 12.

3

Respondent points to Oklahoma authority establishing that Petitioner had ten days from his judgment and sentence to seek to withdraw his plea in the trial court. Doc. 11, at 3. *See* Okla. Crim. App. R. 4.2(A) ("In all cases, to appeal from any conviction on a plea of guilty . . ., the defendant must have filed . . . an application to withdraw the plea within ten (10) days from the date of the pronouncement of the Judgment and Sentence . . . ."). Petitioner does not assert that he attempted to withdraw his plea but, rather, claims he was "denied th[is] ability." Doc. 1, at 5. Similarly, he maintains he "was denied his right to Direct Appeal." *Id.* at 1. Because Petitioner did not seek to withdraw his plea, file a direct appeal, or petition for a writ of certiorari from the United States Supreme Court, his convictions became final on March 23, 1998, ten days after he was sentenced.[7] *See Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006) (the judgment on petitioner's convictions pursuant to a guilty plea was final ten days after entry of judgment and sentence where petitioner failed to move to withdraw his plea, appeal his conviction, or seek a writ of certiorari in the United States Supreme Court).

So, as Respondent submits, on March 24, 1998, § 2244(d)(1)'s limitation period began to run on any claims challenging the validity of Petitioner's

---

[7] Petitioner does not allege that he "file[d] a petition for certiorari in the United States Supreme Court." *See* Doc. 1, at 2.

convictions, and he had one year, or until March 24, 1999, to file his federal habeas petition. Doc. 11, at 3. Petitioner did not file his § 2254 petition until January 30, 2015, many years beyond the expiration of the applicable one-year period.

In his opposition to the dismissal motion, Petitioner faults Respondent's failure to address the "controlling cases in his brief," specifically, *Orange v. Calbone*, 318 F.3d 1167, 1171 (10th Cir. 2003), and *McCleary v. Sutter*, No. CIV-08-42-M, 2008 WL 3925280 (W.D. Okla. Aug. 20, 2008) (unpublished order). Doc. 12, at 2. But Petitioner acknowledges that the state district court denied his attempts to appeal his conviction out of time and also that the state appellate court affirmed the denials on appeal. Doc. 1, at 6-7. So, the decision in *Orange* (recognizing Oklahoma's "appeal out of time" proceeding was part of direct review process for 28 U.S.C. § 2244(d)(1)(A)), has no application to the factual circumstances in this case. *See Gobert v. Province*, 381 F. App'x 756, 757 (10th Cir. 2010) (citing *Orange* and concluding that "because the Oklahoma courts denied Mr. Gobert's request to appeal out of time, these proceedings do not count toward the direct review process for purposes of § 2244(d)(1)(A)"). Similarly, Petitioner's reliance on *McCleary* is misplaced. There, the petitioner had not exhausted his state remedies before seeking federal habeas relief. *McCleary*, 2008 WL 3925280, at *3 n.6.

5

Absent statutory or equitable tolling, Petitioner's federal habeas claims are untimely under § 2244(d)(1)(A).

## III. Statutory tolling.

Statutory tolling is available when, during the one-year limitation period, a petitioner properly files a petition for post-conviction or other collateral review in the state trial court. *See* 28 U.S.C. § 2244(d)(2). Respondent maintains that the only state court motion filed before that one-year period expired was Petitioner's request for judicial review filed on June 25, 1998. Doc. 11, at 3-6. Petitioner does not suggest otherwise. Docs. 1, 2, 3, 12.

Respondent further maintains that a "request for judicial review . . . is merely a request to the court that imposed the sentence for a review of the penalty, not a collateral attack on the legality of the underlying conviction and sentence." Doc. 11, at 4. The undersigned disagrees. "The Supreme Court has defined 'collateral review' as 'judicial review of a judgment in a proceeding that is not part of direct review,' including motions to reduce sentence under state law." *Najera v. Murphy*, 462 F. App'x 827, 830 (10th Cir. 2012) (applying Wyoming law) (quoting *Wall v. Kholi*, 562 U.S. 545, 131 S. Ct. 1278, 1281-82 (2011) (holding that a motion to reduce sentence under Rhode Island state law was "collateral review" and tolled the AEDPA statute of limitations); *see also Neiberger v. McCollum*, 577 F. App'x 850, 853 (10th Cir. 2014) ("We also agree

6

with the district court that Defendant was entitled to tolling under § 2244(d)(2) for the 11 days from the time he filed his motion for sentence modification to the time the state court denied the motion.") (applying Oklahoma law).

The undersigned presumes for this case that Petitioner's June 25, 1998 filing serves as a collateral-review mechanism. Petitioner does not dispute Respondent's showing that the state district court denied his request for review no later than July 31, 1998. Doc. 11, at 6; Docs. 1, 2, 3, 12. So, Petitioner had an additional thirty-six days, or until April 29, 1999, to file his § 2254 petition.

Petitioner filed nothing further until he sought post-conviction relief on August 20, 2001. Doc. 1, at 2, 6-7.[8] That and any subsequent application did not further statutorily toll his period of limitation. *See Clark*, 468 F.3d at 714 ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations.") (citations omitted). And, "[i]t follows that tardy post-conviction applications in state court do not start a new limitations period running within which a federal application can be timely filed [as s]uch a rule would swallow the one year statute of limitations period prescribed by § 2244(d)." *O'Bryant v. Oklahoma*, 568 F. App'x 632, 636 (10th Cir. 2014). Similarly, "[i]t also follows that federal courts do not consider the

---

[8] Respondent's submissions reflect that Petitioner actually filed the application for post-conviction relief on July 31, 2001. Doc. 11, at Ex. 4.

7

claims raised in state post-conviction applications filed after the limitations period . . . have run." *Id.*

Absent equitable tolling, Petitioner's federal habeas claims are untimely under § 2244(d).

IV. **Equitable tolling.**

The period of limitation also "may be subject to equitable tolling" if application of the period of limitation would possibly render the habeas remedy "inadequate and ineffective." *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (citations omitted); *see also Holland v. Florida*, 560 U.S. 631, 645 (2010) ("hold[ing] that § 2244(d) is subject to equitable tolling in appropriate cases") (citations omitted). "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Sigala v. Bravo*, 656 F.3d 1125, 1128 (10th Cir. 2011) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is limited to "rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citations omitted). To justify equitable tolling, the petitioner must "demonstrate[] that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (citations omitted). The petitioner "bears a strong burden to show

8

specific facts to support his claim of extraordinary circumstances and due diligence." *Yang*, 525 F.3d at 928. Respondent argues that Petitioner has not met that burden. Doc. 11, at 6-16.

Petitioner maintains that his attorney abandoned him and "failed to comply with the Petitioner's orders to file his direct appeal and/or withdrawal his plea." Doc. 1, at 4, 5. He avers in a "Sworn Affidavit" filed with his petition that immediately after his March 13, 1998 sentencing he asked his trial counsel to file his direct appeal and that counsel said "'[h]e was going to come and see [Petitioner] on the following Monday to discuss with him about his appeal.'" Doc. 3, Ex. F, ¶ 4.[9] Petitioner further avers that "[w]hen Monday came and went with no sight of counsel, [Petitioner] had his family call him each and every day [but] counsel was not returning any phone calls or coming to see [Petitioner]." *Id.* Petitioner states he was sent to a prison facility for two-and-a- half months and then to another facility but "there was never any response from trial counsel" and his "family tried to contact him for almost six months . . . ." *Id.* ¶ 5.

Petitioner cites *Maples v. Thomas*, 132 S. Ct. 912, 915 (2012), suggesting that attorney abandonment is an extraordinary circumstance justifying equitable tolling. Doc. 1, at 15-17. The undersigned, however, agrees with

---

[9] March 13, 1998 fell on a Friday. *See* http://www.timeanddate.com/calendar/?year=1998&country=1.

9

Respondent that Petitioner's reliance on *Maples* "is misplaced." Doc. 11, at 9.

The *Maples* "Court recognized that where a petitioner has been abandoned by his attorney, he cannot 'be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.'" *Mack v. Falk*, 509 F. App'x 756, 759 (10th Cir. 2013) (quoting *Maples*, 131 S. Ct. at 924). "*Maples* does not stand for the proposition that a petitioner's initial 'lack[ of] reason to believe his attorneys of record, in fact, are not representing him' might excuse complete inaction on the part of the petitioner for several years." *Id.* (quoting *Maples*, 132 S. Ct. at 924).

Here, as Petitioner explains it, his trial counsel failed to visit him, as promised, on the Monday following his Friday sentencing and failed to return daily phone calls from Petitioner's family. Doc. 3, Ex. F, ¶ 4. But *Maples* does not excuse Petitioner's "inaction" in seeking relief after some six months of receiving no response from trial counsel despite his family's diligent efforts to contact counsel. *Mack*, 509 F. App'x at 759; *see* Doc. 3, Ex. F, ¶ 5; *see also Hicks v. Kaiser*, No. 99-6302, 2000 WL 27694, at *2 (10th Cir. Jan. 14, 2000) (unpublished op.) (petitioner's two-year delay in raising an initial challenge to his conviction demonstrated a lack of diligence, "even if he was initially hampered by his attorney's unavailability"). And, unlike the petitioner in *Maples*, here, Petitioner was not left without notice to pursue his claims. Doc.

10

11, Ex.2, at 13; *id.* Ex. 3, at 6.

Petitioner also claims he "thought that since trial counsel failed to fulfill his duty he had lost any chance to proceed in the State court and the Federal court." Doc. 1, at 17. And, he asks "that this Court take judicial notice of further equitable reasons why it has taken as long as it has to file his Federal Habeas Corpus 2254 application," including "the fact that sex offenders are subject to extremely harsh treatment by other inmates." *Id.* at 17-18. He asserts that "[s]ex offenders do not have equal access to the law library without putting their lives in mortal danger" and maintains that "[i]f the Petitioner would have set foot in the law library at either Oklahoma State Penitentiary (where he was first housed) or Oklahoma State Reformatory (OSR), and allowed the law clerks to discover the true nature of his charges; in all reality, the Petitioner would have been <u>killed</u>!!!" *Id.* at 18-19. Petitioner also contends that "since [he] was abandoned and not consulted by trial counsel he was unaware of the appeal procedure [and] thought he was unable to do anything until his grandmother several years later spoke to an attorney." Doc. 2, at 8-9.

Petitioner points to no authority that would permit the court to judicially notice that sex offenders were effectively barred from accessing a particular Oklahoma prison law library from the time of his conviction in March of 1998 through April of 1999 when his limitations period ended and thereafter. Nor is

11

the undersigned aware of any such authority. *See* Fed. R. Evid. 201. Petitioner's June 25, 1998 request for judicial review belies a lack of access to procedural rules during the critical time period. *See supra* § III. Ignorance of the law does not excuse timely filing of a habeas action and fails to justify Petitioner's lack of diligence in pursuing federal habeas relief. *See Marsh,* 223 F.3d at 1220.

Finally, Petitioner alleges that "a natural learning and comprehension disability" compels him to "rely on the assistance of other inmates because of these disabilities or, the money to hire an attorney." Doc. 1, at 18. He claims "diminished capacity when it comes to comprehending the law." *Id.* at 19. But, "federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity such as that resulting in institutionalization or adjudged mental incompetence." *O'Bryant*, 568 F. App'x at 636 (citations omitted). Petitioner's "assertions fall far short of that level of specificity and incapacity which qualify as an extraordinary circumstance that prevented him from filing for years at a time." *Id.*

Petitioner provides no facts from which the court could find there are "rare and exceptional" circumstances that warrant equitable tolling. *Gibson*, 232 F.3d at 808. And, even if Petitioner could show rare and extraordinary circumstances justifying some equitable tolling of the limitation period, he must also demonstrate that he has diligently pursued his federal claims, which he fails to

do. *See id.*; *Marsh*, 223 F.3d at 1220. "[T]his Circuit has generally declined to apply equitable tolling when it is facially clear from the timing of the state and federal petitions that the petitioner did not diligently pursue his federal claims." *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003) (citations omitted); *Sigala*, 656 F.3d at 1128 (requiring petitioner to "vigorously attempt[] to ensure his habeas petition was timely filed").

## V. Recommendation and notice of right to object.

For the stated reasons, the undersigned recommends that Judge West grant Respondent's motion to dismiss, Doc. 10, and dismiss this petition for a writ of habeas corpus as time-barred.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court on or before June 25, 2015, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to file a timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

ENTERED this 5th day of June, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE